PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS B. TAYLOR, | ) | CASE NO.  4:11CV00028 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MAHONING COUNTY CHILDREN | ) | |
| SERVICES BOARD, et al., | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 32 and 33] |

This action is before the Court upon Defendant Henderson's Motion for Partial Summary Judgment (ECF No. 32) and Defendants Mahoning County Children Services Board, Louis Wainwright, and Kim Vechiarelli's Motion for Summary Judgment.  ECF No. 33.  The Court has reviewed the parties' briefs and the applicable law.  For the reasons provided below, the Court grants Defendant Henderson's Motion for Partial Summary Judgment, and grants Defendants Mahoning County Children Services Board, Louis Wainwright, and Kim Vechiarelli's Motion for Summary Judgment.

## I.  Background

Defendant Mahoning County Children Services ("MCCSB") is a public children services agency pursuant to Ohio Revised Code § 5153.03.  ECF Nos. 32 and 35.  In that capacity, MCCSB operates three group homes, including the Swanston Group Home ("Receiving Home").  ECF No. 31-6 at 7:20.  The receiving home usually has a mixed-gender residency of about ten residents, with ages varying from eight to sixteen years.  ECF No. 31-6 at 8:16-19 and 45:14.

(4:11CV00028)

The receiving home is typically staffed with one maintenance person, one cook, one tutor, one coordinator, and eleven youth leaders.  ECF No. 31-6 at 8:18-20.  The youth leaders work staggered eight hour shifts and are scheduled in a way so that there are always two youth leaders on duty during daytime.  ECF No. 31-6 at 14:9-18.  Youth leaders report to coordinators, who report to the Chief Supervisor.  ECF No 31-6 at 11:18-12:6.  At all times material to this case, Defendant Kim Vechiarelli served as a coordinator (ECF No. 31-6 at 41:15-16), and Defendant Louis Wainwright served as Chief Supervisor.  ECF No 31-6 at 6:22.  Wainwright also shared duties with two other employees as a coordinator due to a vacancy at the position.  ECF No. 31-6 at 13:1-5.

In 2008, Defendant Cedric Henderson, an adult at all times material to this case, applied for a youth leader position with MCCSB.  ECF No. 31-2 at 7:10-13.  He was interviewed by Wainwright, Vechiarelli, and personnel officer David Macek.  ECF Nos. 31-2 at 8:19; 31-4 at 9:1-2.  Henderson testifies that, during the interview, he denied being involved in any situation where allegations of sexual misconduct were made against him.  ECF No. 31-2 at 30:6-13.  MCCSB also conducted a background check by requesting arrest and conviction records from various state agencies.  ECF No. 31-4 at 5:4-7.  One such request was sent to the Youngstown Police Department and returned to MCCSB indicating that Henderson had no previous arrests or convictions at the time.  ECF No. 31-4 at 5:14.  Henderson had been previously investigated by Youngstown police in 2004 for an alleged incident of sexual contact between Henderson and a female minor.  ECF Nos. 31-2 at 31:1-6; 36-1 at 14:1-5.  While documentation of this investigation is public record (ECF No. 36-2 at 41:16-17), MCCSB's background check did not

2

(4:11CV00028)

request this information, and Youngstown police did not provide this information in its response.

ECF No. 31-4 at 7:17-20.

MCCSB hired Henderson as a youth leader.  ECF No. 31-6 at 30:20-22.  Henderson received training from both Wainwright and Vechiarelli as part of his mandatory first-year orientation program.  ECF No. 31-6 at 37:17-19 and 41:12-14.  Prior to the events that precipitated this lawsuit, Henderson had only once been reprimanded by a supervisor for engaging in roughhousing with some residents after a football game.  ECF Nos. 31-2 at 29:16-24; 31-6 at 26:22.  Testimony also suggests that Henderson was repeatedly seen hugging residents of the receiving home.  ECF No. 31-2 at 27:2-8.  While this behavior violated the staff policy of maintaining "arm's length boundaries" (ECF Nos. 31-3 at 17:11-15; 36-1 at 8:2-5), Henderson does not recall ever being formally reported for the hugging.  ECF No. 31-2 at 24:17-19.

Jane Doe was a thirteen year old minor for all events material to this case.  ECF No. 18 ¶ 2.  Before she was placed in the receiving home on December 22nd (ECF No. 36-1, Exhibit 3), Doe had been hospitalized at Belmont Pines Hospital, where she revealed that she had been sexually abused by her biological father for five years.  ECF No. 36-2 at 11:18-21.  On December 25th at around 3:00 p.m., Doe entered into the receiving home's office to talk to Henderson. ECF Nos. 31-1 at 10:5-7; 31-2 at 47:7.  During this conversation, Doe and Henderson hugged and kissed, but both allege that the other initiated the contact.  ECF Nos. 31-1 at 11:10-12; 31-2 at 52:19-21.  Henderson has admitted to touching Doe's thigh and butt as she left the office. ECF No. 31-2 at 32:14-21 and 54:11-14.  Two hours later, Henderson placed his arm around Doe

3

(4:11CV00028)

and touched her breast.  ECF No. 31-1 at 14:4-7.  Henderson admits to the contact but claims that

it was unintentional.  ECF No. 31-2 at 59:14-16.

     Later that evening, Doe reported the two events to youth leader Darlene Jackson.  ECF

Nos. 31-1 at 16:1-5; 31-3 at 32:18-19.  After this conversation, Jackson filled out an incident

report.  ECF No. 31-3, Exhibit 2.  Jackson called Wainwright and left a voicemail at around 11

p.m.  ECF No. 31-3 at 41:6-8.  She later called Wainwright again from her home on December

26th at about 11 a.m.  ECF Nos. 31-3 at 41:20; 31-6 at 64:17-22.  Wainwright testifies to both

knowing that Henderson was "not scheduled to work at that time period" and asking Jackson to

check the work calender (ECF No. 31-6 at 65:6-10), though Plaintiff observes this is something

Jackson could not have done from home as the calender was located in the receiving home's

office.  ECF No. 35 at 15.

     Henderson arrived at the receiving home for his scheduled 3:00 p.m. shift.  ECF No. 31-2

at 64:20-21.  Upon arrival, a co-worker informed Henderson that Doe's mother had called to

complain about improper conduct by a male employee of the receiving home.  ECF No. 31-2 at

66:1-9.  Doe and another resident then asked Henderson to take them to a store.  ECF No. 31-2 at

66:21.  While on the way to the store, Henderson asked Doe if she had any problems with the

staff.  ECF Nos. 31-1 at 17:15-20; 31-2 at 68:11-14.  Doe later asked to be walked back to the

receiving home because she felt uncomfortable around Henderson.  ECF No. 31-2 at 69:4-6.

Henderson escorted Doe back, then walked the other girl back to the store.  ECF No. 31-2 at

69:12-14.

(4:11CV00028)

When Henderson returned from the store at around 4 p.m., he learned that another youth leader was on the phone with Wainwright.  ECF No. 31-2 at 72:19-20.  Wainwright talked with Henderson, and asked Henderson if anything had happened between Henderson and Doe.  ECF No. 31-2 at 73:13-16.  Wainwright then told Henderson that he could go home for the day.  ECF Nos. 31-2 at 73:17-18; 31-6 at 68:15-17.  During this phone conversation, Doe ran away from the receiving home.  ECF No. 31-1 at 19:18-20.  She was returned to her grandmother's custody on December 29th.  ECF No. 36-2 at 21:6.  Shortly thereafter, Doe attempted suicide and was admitted to Akron Children's Hospital, and later Belmont Pines.  ECF No. 31-1 at 26.[1]

Douglas Taylor, the court-appointed guardian of Jane Doe, filed a complaint on November 5, 2010 in the Mahoning County Court of Common Pleas.  ECF No. 1-1.  Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1441(a) and 1446.  This Court has original jurisdiction over the case pursuant to 28 U.S.C. § 1331.

In his amended complaint (ECF No. 18), Plaintiff alleges eight causes of action against Defendants:

| | | |
|---|---|---|
| Count I: | The Minor, Jane Doe, while in the custody and control of The Board, was assaulted, battered, and did suffer gross sexual imposition on multiple occasions from defendant Henderson.  ECF No. 18 ¶ 10. | |
| Count II: | Defendant Henderson did cause injury to Jane Doe by criminal acts, and Plaintiff is entitled to recover full damages pursuant to R.C. 2307.60.  ECF No. 18 ¶ 18. | |

---

[1]  Redacted portion of Jane Doe's Deposition cited to by Plaintiff's Brief in Opposition to Summary Judgment.  ECF No. 35 at 16-17.

(4:11CV00028)

| | | |
|---|---|---|
| Count III: | Defendant The Board is liable for the acts and omissions of its agents and employees, defendants Henderson, Wainwright, and Vechiarelli, performed in the course and scope of their employment.  ECF No. 18 ¶ 20. |
| Count IV: | Defendants The Board, Wainwright, and Vechiarelli were negligent in the hiring, retention, supervision, management, monitoring, education, training, and orientation of defendant Henderson.  ECF No. 18 ¶¶ 23-25. |
| Count V: | Defendants Wainwright and Vechiarelli did by their hiring, retention, supervision, monitoring, management, education, training, and orientation of defendant Henderson, through acts and omissions, directly and proximately cause injury and damage to Minor Jane Doe.  ECF No. 18 ¶ 28. |
| Count VI: | Defendants The Board, Henderson, and in their individual capacities, defendant Wainwright and defendant Vechiarelli did deprive Jane Doe of her constitutional rights guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. § 1983 including her right to reasonably safe conditions of confinement and freedom from unreasonable bodily restraints.  ECF No. 18 ¶ 34. |
| Count VII: | The acts and omissions of Defendant The Board, and, in their individual capacities, Defendants Wainwright, Vechiarelli and Henderson, occurred despite their knowledge that a substantial risk of serious injury existed, and constituted cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution.  ECF No. 18 ¶ 47. |
| Count VIII: | Defendants intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress to Jane Doe.  ECF No 18. ¶ 50. |

Defendant Henderson has moved for partial summary judgment on Counts II and VII

(ECF No. 32), to which Plaintiff responded (ECF No. 34), and Henderson replied.  ECF No. 38.

Specifically, Henderson alleges that Plaintiff has no claim under R.C. 2307.60 as the statute does

not create a separate cause of action; and that Plaintiff has no claim for violations of the Eighth

6

(4:11CV00028)

Amendment because the Eighth Amendment only applies to those who are convicted of crimes.

ECF No. 32 at 7-8.

In addition, MCCSB, Wainwright, and Vechiarelli have moved for summary judgment on

every count they face (ECF No. 33), to which Plaintiff responded (ECF No. 35), and defendants

replied.  ECF No. 38.  MCCSB alleges that it is entitled to judgment on the § 1983 claims against

it (ECF No. 33 at 3); and that, as a political subdivision, MCCSB is entitled to immunity under

R.C. 2744.02(A) to the state law claims against it.  ECF No. 33 at 7.  Wainwright and Vechiarelli

argue that they are entitled to qualified immunity because Plaintiff has failed to state claims of

supervisory deliberate indifference under § 1983.  ECF No. 33 at 7.  Wainwright and Vechiarelli

also allege that they are entitled to qualified immunity under R.C. 2744.03 with respect to the

state law claims they face (ECF No. 33 at 9), and that Plaintiff fails to state a *prima facie* case for

intentional infliction of emotional distress.  ECF No. 33 at 10.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

7

(4:11CV00028)

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980

F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party when deciding whether a genuine issue of

material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986), stated that in order for a motion for summary judgment to be granted, there must be

no genuine issue of material fact. *Id.* at 248.  A fact is "material" only if its resolution will affect

the outcome of the lawsuit. *Id.*  In determining whether a factual issue is "genuine," the court

must decide whether the evidence is such that reasonable jurors could find that the non-moving

party is entitled to a verdict. *Id.*  Summary judgment "will not lie . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Id.*  To withstand summary

judgment, the non-movant must show sufficient evidence to create a genuine issue of material

fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere

(4:11CV00028)

scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Analysis

#### A. Claims against Henderson

Henderson has moved for summary judgment on the civil action under R.C. 2307.60 (Count II) and the Eighth Amendment § 1983 claim (Count VII).

#### 1. Civil Action under R.C. 2307.60 (Count II)

Plaintiff alleges that Henderson's criminal actions have injured Jane Doe, and thus Henderson is liable to Doe for a civil action under R.C. 2307.60. ECF No. 18 ¶ 18.

R.C. 2307.60(A)(1) states in part that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." *Id.* The statute has been interpreted as "a codification of the common law in Ohio that a civil action is not merged in a criminal prosecution which arose from the same act or acts." *Story v. Hammond*, 4 Ohio 376, 378 (1831). In other words, a claim cannot be brought solely pursuant to R.C. 2307.60. *Peterson v. Scott Const. Co.*, 451 N.E.2d 1236, 1238 (Ohio Ct. App. 1982); *Schmidt v. State Aerial Farm Statistics, Inc.*, 403 N.E.2d 1026, 1027 (Ohio Ct. App. 1978). Thus, a plaintiff's right to relief for an injury sustained by criminal actions is predicated upon the existence of a separate civil action that vindicates the injury: "Claims for civil damages based solely upon an alleged violation of a criminal statute are inappropriate. Rather, the claim must arise from common law or a statutory right to a civil cause of action." *Jasar Recycling, Inc. v.*

9

(4:11CV00028)

*Major Max Mgmt. Corp.*, No. 4:08CV2830, 2010 WL 395212, at *7 (N.D. Ohio Jan. 22, 2010)

(Limbert, M.J.) (internal citations omitted).

In *Jasar*, plaintiff sought summary judgment against defendants on a number of counts,

including conversion, fraud, and a civil action under R.C. 2307.60.  Plaintiff pleaded that

defendant had committed theft by deception in violation of R.C. 2913.02, and thus plaintiff was

entitled to a civil action for injury suffered.  *Jasar*, 2010 WL 395212, at *7.  The Magistrate

Judge denied plaintiff's motion for summary judgment on that count, noting that plaintiff had

pleaded the R.C. 2307.60 civil action erroneously but also that, if the error were ignored,

summary judgment would be "duplicative" of the conversion and fraud claims that the

Magistrate Judge granted.  *Id.* at *8.

Here, Plaintiff has pleaded a civil action under R.C. 2307.60 arising out of Henderson's

sexual imposition.  R.C. 2907.06(A)(1) ("No person shall have sexual contact with another . . .

when the offender knows that the sexual contact is offensive to the other person, or one of the

other persons, or is reckless in that regard.").  Defendant correctly points out that Plaintiff may

not rely upon R.C. 2307.60 as a separate cause of action.  Plaintiff's battery claim (Count I)

against Henderson, however, is an appropriate cause of action for vindicating the injury suffered

as a result of Henderson's alleged sexual imposition.  "A person is subject to liability for battery

when he acts intending to cause a harmful or offensive contact, and when a harmful contact

results.  Contact which is offensive to a reasonable sense of personal dignity is offensive

contact."  *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988) (internal citations

omitted).  Henderson has not moved for summary judgment on the battery claim, and Plaintiff

10

(4:11CV00028)

could prevail at trial on this issue.  Accordingly, Plaintiff should amend his complaint to include

monetary damages pursuant to R.C. 2307.60 in his prayer for relief rather than as a separate

cause of action.  Henderson's motion is granted as to Count II.

### 2.  Eighth Amendment § 1983 Claim (Count VII)

Plaintiff also alleges that Henderson subjected Doe to cruel and unusual punishment, and

thus is liable under § 1983 for violating Doe's Eighth Amendment rights.  Henderson has moved

for summary judgment, arguing that Plaintiff fails to state a proper Eighth Amendment § 1983

claim.

The Eighth Amendment "limit[s] the power of those entrusted with the criminal-law

function of government." *Ingram v. Wright*, 430 U.S. 651, 664 (1977).  Eighth Amendment

analysis is only appropriate "after the State has complied with the constitutional guarantees

traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318 (1986)

(citing *Ingram*, 430 U.S. at 671 n.40).

Here, Jane Doe was not incarcerated at the receiving home as a result of a criminal

conviction.  Doe was placed in the receiving home only after her grandmother signed a voluntary

agreement of care with the receiving home.  ECF No. 36-2 at 21:11-16.  The employees have no

authority to keep a child captive at the receiving home; employees of the receiving home can

only call the police if they are unable to convince the child not to run away.  ECF No. 31-6 at

54:4-8.  As such, Plaintiff does not have an Eighth Amendment § 1983 claim against Henderson

or any other Defendants.  Henderson's motion is granted.

(4:11CV00028)

### B.  Claims against MCCSB

MCCSB has moved for summary judgment on the following causes of action: Eighth and Fourteenth Amendment § 1983 claims; and state law claims for vicarious liability, negligence, and intentional infliction of emotional distress.

#### 1.  Eighth Amendment § 1983 Claim (Count VII)

As discussed above, Plaintiff does not have an Eighth Amendment § 1983 claim against MCCSB because Jane Doe was not incarcerated at the receiving home, nor was she there as a result of a criminal prosecution.  MCCSB's motion is granted as to Count VII.

#### 2.  Fourteenth Amendment § 1983 Claim (Count VI)

Plaintiff alleges that MCCSB is liable for the conduct of Henderson that deprived Jane Doe of her Fourteenth Amendment right to be free from physical sexual abuse.  *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996) ("[T]he liberty deprivation that sexual abuse inflicts upon the victim is an abuse of governmental power of the most fundamental sort.").  Plaintiff states that MCCSB's failure to properly screen, train and supervise Henderson resulted in the deprivation of her constitutional right.  ECF No. 18 ¶ 37.

A political subdivision like MCCSB[2] cannot be held liable for the actions committed by its employees under § 1983 on a theory of *respondeat superior*.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a 'policy or custom' that was the 'moving force' behind the

---

[2]  MCCSB is a children service board as defined by R.C. 5153.03 and, thus, is a political subdivision of Mahoning County.  ECF No. 18 ¶ 3.

12

(4:11CV00028)

deprivation of the plaintiff's rights." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).  Plaintiff can demonstrate the existence of an illegal policy or custom by demonstrating the presence of either "a policy of inadequate training or supervision" or "a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

A failure to train or supervise claim has three components. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir.1992).  First, "the training or supervision was inadequate for the tasks performed." *Ellis*, 455 F.3d at 700.  Second, "the inadequacy was the result of the municipality's deliberate indifference." *Id.*  Third, "the inadequacy was closely related to or actually caused the injury." *Id.*  In proving a policy was inadequate, a plaintiff "cannot rely solely on a single instance to infer a policy of deliberate indifference." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 821 (1985) (calling the inference that a single example of unnecessary force was attributable to inadequate training an "unwarranted" one).

Using these principles as a framework for analysis, Plaintiff's failure to train claim is lacking an essential element. *Celotex*, 477 U.S. at 323.  Plaintiff has not presented sufficient evidence to establish that MCCSB's youth leader training reflects deliberate indifference.  On the contrary, the evidence suggests just the opposite.  Henderson received three months' of training at all three group homes operated by MCCSB.  ECF No. 31-2 at 11:22-24.  In addition, he received certification in various courses, including training for working with autistic children

13

(4:11CV00028)

([ECF No. 31-2 at 16:1-2](#)), adolescent depression ([ECF No. 31-6 at 33:18](#)), and CPI training for restraining children safely ([ECF No. 31-2 at 17:7-9](#)).  Henderson also received training on proper compliance with the Ohio Abuse Reporting Statute.  [ECF No 31-2 at 70:14-17](#).  This extensive training regimen does not reflect that MCCSB is deliberately indifferent to the safety of the children placed in its homes.

Furthermore, Plaintiff has not presented any evidence that similar allegations have been made against other youth leaders.  Stacy Montalvo, a former employee of MCCSB, testifies that she could not recall investigating any other sexual abuse allegations during her employment with MCCSB from 2006 to 2010.  [ECF 36-2 at 8:18-20](#).  Plaintiff has not presented any evidence that contradicts this testimony.  Even taking all the evidence in the light most favorable to Plaintiff, the only instance of an employee being investigated for sexual abuse during that period is the case at bar.  Plaintiff cannot infer an inadequate policy without other instances of youth leaders or other employees of MCCSB sexually abusing children.  *Thomas*, 398 F.3d at 433.

Plaintiff has also alleged that MCCSB's acts or omissions constitute a "custom of tolerance or acquiescence of federal rights violations."  *Id.* at 429.  Here, the custom complained of is that MCCSB "failed to take action that was obviously necessary to prevent the sexual abuse."  [ECF No. 18 ¶ 41](#).

When the custom complained of is one of inaction rather than action, a plaintiff must show the following:

> (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4)

14

(4:11CV00028)

> that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (quoting *Claiborne Cnty.*, 103 F.3d at 508).  Plaintiff's custom theory is based on the fact that MCCSB had a custom of complying with the state minimum requirements for background checks, and their failure to do more amounts to deliberate indifference.  ECF No. 35 at 11-12.  There are two problems with Plaintiff's custom theory which, taken together, demonstrate that Plaintiff is lacking at least one essential element to his claim.

First, Plaintiff's allegation as it is pleaded and argued in his Opposition Brief does not demonstrate that MCCSB engaged in illegal activity.  It is undisputed that MCCSB routinely complied with the state minimum requirements for a background check.  ECF No. 31-4 at 5:1-3.  It is also undisputed that MCCSB is able to acquire more information than required by law, and it frequently does.  ECF No. 31-4 at 8:2-9.  From this, Plaintiff would have the Court believe that MCCSB has engaged in illegal activity in its hiring practices on the grounds that MCCSB can do more but chooses not to do so.  The argument is without merit.  It suffices to observe that Plaintiff agrees that MCCSB has complied with the law in its hiring practices.  ECF No. 35 at 11.  Having made this concession, Plaintiff's argument rings hollow.

Second, Plaintiff's argument incorrectly applies the test from *Claiborne County* and *Thomas*.  In *Claiborne County*, the Sixth Circuit made it clear that the illegal activity prong concerns actions committed by the defendant's employee, not by the defendant.  The *Claiborne County* Court observed that, in a suit against a school board involving allegations that school employees sexually abused a minor, the Plaintiff would need to establish "the existence of a clear

15

(4:11CV00028)

and persistent pattern of sexual abuse by school employees," and "notice or constructive notice on the part of the School Board." *Clairborne Cnty., 103 F.3d at 508*.

So to properly state a claim under a custom theory, Plaintiff would need to demonstrate that there was a clear and persistent pattern of youth leaders engaging in sexual abuse and that MCCSB had notice of the abuse.  However, as mentioned above, Henderson's conduct appears to be an isolated incident: there have been no investigations into allegations of sexual abuse committed by employees of MCCSB from 2006 to 2010.  ECF No. 36-2 at 8:18-20.  Plaintiff has presented no evidence to rebut this testimony.  Consequently, it cannot be said that there was a clear and persistent pattern of sexual abuse at the group homes operated by MCCSB, much less one that MCCSB would have notice of.

Plaintiff is unable to establish *Monell* liability against MCCSB under either a theory of failure to train or a custom of tolerance towards federal right violations.  Therefore, summary judgment shall be granted for MCCSB as to Count VI.

### 3.  State Law Claims (Counts III, IV, and VIII)

Plaintiff has alleged a number of state law claims against MCCSB, including vicarious liability, negligence, and intentional infliction of emotional distress.  ECF No. 18.  In response to these claims, MCCSB has claimed immunity under R.C. 2744.02, which states that "a political subdivision is not liable in damages in a civil action for injury . . . allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  R.C. 2744.02(A).  Having established that immunity exists, the next step of analysis requires a court to determine if any of the five

(4:11CV00028)

exceptions to immunity contained in R.C. 2744.02(B) apply.  *Cater v. Cleveland*, 83 Ohio St.3d

24, 28 (1998).

      MCCSB argues that none of the exceptions listed in R.C. 2744.02(B) apply to this case.

ECF No. 33 at 7.  Plaintiff acknowledges this, and does not oppose summary judgment on the

state law claims against MCCSB.  ECF No. 35 at 13.  MCCSB's motion is granted as to Counts

III, IV, and VIII.

### C.  Claims against Wainwright and Vechiarelli

      Wainwright and Vechiarelli have moved for summary judgment on the following causes

of action: Eighth and Fourteenth Amendment § 1983 claims; and state law claims for negligence,

supervisory employee misconduct, and intentional infliction of emotional distress.

### 1.  Eighth Amendment § 1983 Claim (Count VII)

      As discussed above, Plaintiff does not have an  Eighth Amendment § 1983 claim against

Wainwright or Vechiarelli because Jane Doe was not incarcerated at the receiving home, nor was

she there as a result of a criminal prosecution.  Wainwright and Vechiarelli's motion is granted as

to Count VII.

### 2.  Fourteenth Amendment § 1983 Claim (Count VI)

      Plaintiff alleges that Wainwright and Vechiarelli are liable for the conduct of Henderson

that deprived Jane Doe of her Fourteenth Amendment right to be free from physical sexual abuse.

*Claiborne Cnty.*, 103 F.3d at 506.  Plaintiff states that Wainwright and Vechiarelli have

improperly hired, trained, and supervised Henderson, which resulted in the deprivation of Doe's

constitutional rights.  ECF No. 35 at 14.  In addition, Plaintiff has alleged that Wainwright's

17

(4:11CV00028)

failure to prevent further contact between Henderson and Jane Doe also constituted a violation of Doe's constitutional rights.  ECF No. 35 at 15.  Both Wainwright and Vechiarelli have raised the affirmative defense of qualified immunity to the Fourteenth Amendment § 1983 claims they face. ECF No. 21 ¶ 38.

Qualified immunity analysis requires two separate inquiries.  First, the facts—taken in the light most favorable to the party asserting the injury—must show the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the right must be clearly established at the time of the violation.  *Id.*  Clearly established means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In other words, "whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 201.  These two prongs must be satisfied to show that an officer is not entitled to qualified immunity, *Saucier*, 533 U.S. at 201, although courts no longer need to address each prong in order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff argues that Doe's Fourteenth Amendment right to be free from sexual abuse was violated by Wainwright and Vechiarelli through their improper hiring, training, and supervision of Henderson.  ECF No. 35 at 14.  However, the Sixth Circuit has required more than *respondeat superior* for a defendant to be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the

18

(4:11CV00028)

specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982).  Therefore, the plaintiff must show the supervisory officer "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300 (quoting *Hays*, 668 F.2d at 874).  As the Sixth Circuit articulated in *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988):

> Even assuming the allegations in [plaintiff's] complaint are true, she has not averred that any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment . . . At best, she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action.  This is insufficient to impose liability on supervisory personnel under § 1983.

*Id.* at 429, *quoted in Shehee*, 199 F.3d at 300.

The *Poe* Court's reasoning is applicable here.  Plaintiff has not alleged, nor does the record reflect, that either Wainwright or Vechiarelli participated in the alleged sexual abuse whatsoever.  Furthermore, there is no basis for asserting that Wainwright or Vechiarelli authorized Henderson's actions on December 25, 2009.  *Cf. Claiborne Cnty.*, 103 F.3d at 508 ("Doe does not claim that the School Board had a custom of affirmatively condoning sexual abuse.  Clearly, no municipality could have such a policy.").  This case is even further away from supervisory liability than *Poe*.  Unlike the defendants in *Poe*, Wainwright and Vechiarelli were not even aware of the risk that Henderson posed.  Plaintiff does not contest the fact that neither Wainwright nor Vechiarelli knew of Henderson's 2004 investigation.  ECF No. 35 at 4.  Indeed, Plaintiff argues that Wainwright and Vechiarelli failed to learn about the investigation or should have learned about it rather than that they knew about the investigation but consciously disregarded it.  Read most charitably, this is an argument that Wainwright and Vechiarelli were

19

(4:11CV00028)

negligent, which is insufficient to establish a § 1983 claim.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Molton v. City of Cleveland*, 839 F.2d 240, 247 (6th Cir. 1988).

Plaintiff also argues that Wainwright and Vechiarelli are liable under § 1983 not as a supervisor, but for their own actions of improper hiring, training, and supervision because they knew of a substantial risk of harm to Doe and disregarded the risk.  ECF No. 35 at 14.  This argument is without merit, notwithstanding its misstatement of the law.[3]  Henderson's hiring took place prior to the incident with Jane Doe.  Indeed, Henderson was hired a full year prior to Doe entering the receiving home.  By definition, Wainwright and Vechiarelli could not have been aware of a substantial risk facing Doe at that time.  Neither Wainwright nor Vechiarelli knew about Henderson's 2004 investigation at the time he was hired (ECF Nos. 31-2 at 30:6-13; 31-4 at 7:17-20), so they were not even aware of a substantial risk facing any resident of the receiving home, much less one who would not be present in the receiving home until a year later.  Therefore, the hiring of Henderson, completed well in advance of the interaction between Henderson and Doe, and without any knowledge of facts that suggest Henderson posed a risk to residents of the receiving home, cannot constitute deliberate indifference to the safety of a minor whom had not yet taken up residence in the receiving home.

---

[3]  As previously indicated, the *Hayes* Court held that the "failure of a supervisory official to supervise, control, or train the offending individual" is not actionable if the plaintiff cannot show the supervisor directly participated in the offending conduct.  *Hays, 668 F.2d at 874*.  Describing the cause of action in different words does not change that this is an action for supervisory § 1983 liability against Wainwright and Vechiarelli.  *See Salehpour v. Univ. of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998)* ("We are not persuaded by Plaintiff's argument where his allegations against Rice and Johnson under the § 1983 claim amount to *respondeat superior* liability.  The fact that Plaintiff did not couch his claim in such terms does not change the substance of the allegation.").

(4:11CV00028)

Finally, Plaintiff argues that Wainwright is liable because he failed to prevent further contact between Henderson and Doe after Wainwright learned of the December 25th incident, and, in failing to prevent the contact, Wainwright was deliberately indifferent to the substantial risk of harm that Henderson posed to Doe. ECF No. 35 at 15. This argument also fails as a matter of law because Plaintiff cannot establish that Wainwright's actions on December 26th were committed with the "culpable state of mind" for a § 1983 claim. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As the Sixth Circuit noted in *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001): "Deliberate indifference is not mere negligence. Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [plaintiff's] health and safety." *Id.* at 686 (citing *Farmer*, 511 U.S. at 835-37). Plaintiff's argument that Wainwright disregarded a substantial risk is unsupported by law and the facts of the case.

In support of his argument, Plaintiff includes testimony that suggests generally that steps should have been taken to prevent further contact between Henderson and Jane Doe. ECF No. 36-2 at 27:12-16. The testimony, however, does not suggest that it fell to Wainwright to prevent subsequent contact between the two. Even if it is assumed that it was Wainwright's responsibility to prevent contact as Henderson's supervisor, the argument fails because Plaintiff does not allege that Wainwright has directly participated in the December 25th incident and thus cannot be liable for Henderson's deprivation of Doe's constitutional right to be free from sexual abuse. *Hays*, 668 F.2d at 874.

21

(4:11CV00028)

Additionally, the undisputed facts of the case reflect that Wainwright did not disregard the allegations that had been made about Henderson.  Wainwright called Henderson on December 26th to ask about the allegations concerning the incident from the previous day.  ECF No. 31-2 at 73:13-16.  Wainwright sent Henderson home after the two had conversed on the phone.  ECF Nos. 31-2 at 73:17-18; 31-6 at 68:15-17.  Plaintiff does not dispute this time line of events.  ECF No. 35 at 9.  Subsequent events suggest that Wainwright should have contacted Henderson sooner than when Henderson had already arrived for his shift.  However, "'mere negligence' does not amount to deliberate indifference."  *Farmer*, 511 U.S. at 860 (Thomas, J., concurring).

Plaintiff is unable to establish that Wainwright and Vechiarelli violated Doe's Fourteenth Amendment rights under a theory of supervisory § 1983 liability.  Therefore, Wainwright and Vechiarelli are entitled to qualified immunity.  Wainwright and Vechiarelli's motion is granted as to Count VI.

**3.  State Law Claims (Counts IV, V, and VIII)**

Plaintiff has alleged a number of state law claims against Wainwright and Vechiarelli, including negligence, supervisory employee misconduct, and intentional infliction of emotional distress.  ECF No. 18.  In response to these claims, Wainwright and Vechiarelli have claimed immunity under R.C. 2744.03(A)(6).  ECF No. 33 at 9.  Additionally, Wainwright and Vechiarelli argue that Plaintiff has failed to state a *prima facie* case for intentional infliction of emotional distress.  ECF No. 33 at 10-11.

22

(4:11CV00028)

R.C. 2744.03(A)(6) grants immunity to employees of political subdivisions except when "the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code." *Cramer v. Auglaize Acres*, 865 N.E.2d 9, 13 (Ohio 2007), *cited in Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*,889 N.E.2d 521, 526 (Ohio 2008).  Under Ohio law, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Fabrey v. McDonald Vill. Police Dept.*, 639 N.E.2d 31, 35 (Ohio 1994).

Plaintiff alleges that Wainwright and Vechiarelli were negligent in the hiring and retention of Henderson, negligent in their supervision and management of Henderson, and negligent in their education and training of Henderson.  ECF No. 18 ¶¶ 23-25.  Even if it was established that Wainwright and Vechiarelli were found to be negligent, they would still be entitled to qualified immunity under R.C. 2744.03(A)(6).  Plaintiff has not alleged the actions of Wainwright or Vechiarelli were outside the scope of their employment or in violation of a portion of the Ohio Revised Code.  Nor has plaintiff alleged that these negligent actions were committed wantonly, recklessly, with malice, or in bad faith.  As such, defendants would still be entitled to immunity because R.C. 2744.03(A)(6) provides immunity for actions that do not rise above negligence to recklessness as defined by Ohio law.  *Fabrey*, 639 N.E.2d at 35; *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002).

(4:11CV00028)

Plaintiff next argues that Wainwright is liable for supervisory employee misconduct because Wainwright's actions, both before the December 25th incident and after learning about Doe's allegations, amounted to recklessness, and thus Wainwright should be deprived of qualified immunity.[4]  ECF No. 35 at 18.

It is well settled under Ohio law that recklessness requires a higher degree of culpability than negligence.  *See, e.g.*, *Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990) ("[Reckless conduct] creates an unreasonable risk of physical harm to another . . . that such risk is substantially greater than that which is necessary to make [defendant's] conduct negligent."). The Supreme Court of Ohio further elaborated on the difference between recklessness and negligence in *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (2008):

> Recklessness, therefore, necessarily requires something more than mere negligence. *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d 31.  In fact, "the actor must be conscious that his conduct will in all probability result in injury."  *Id.* Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity.  *Id.*

*O'Toole*, 889 N.E.2d at 517.

Here, Wainwright could only have acted recklessly after he learned about Henderson's alleged sexual abuse, for without knowledge of the incident, Wainwright could not have known

---

[4]  Plaintiff concedes that there is no evidence of reckless misconduct on the part of Vechiarelli.  ECF No. 35 at 17-18.  Thus, Vechiarelli is entitled to qualified immunity under R.C. 2744.03(A)(6) with respect to the supervisory employee misconduct claim.

24

(4:11CV00028)

that Henderson created an unreasonable risk to Doe.[5]  It is uncontested that Wainwright received

a phone call at 11 a.m. about the allegations concerning Henderson; that Wainwright called

Henderson later that day about the allegations; and that Wainwright sent Henderson home after

the conversation.  ECF Nos. 31-2 at 73:13-18; 31-6 at 68:15-17.  This sequence of events, even

construed in favor of the Plaintiff, does not show a disposition of perversity.  *Fabrey*, 639 N.E.2d

at 35, *cited in* *O'Toole*, 889 N.E.2d at 517.

 Finally, Plaintiff has alleged that Wainwright and Vechiarelli are liable for intentional

infliction of emotional distress.  ECF No. 18 ¶ 50.  In their Motion for Summary Judgment,

Wainwright and Vechiarelli argue that Plaintiff has failed to state the *prima facie* case because

Plaintiff cannot prove a number of elements essential to the claim.  ECF No. 33 at 10.

 To state the *prima facie* case for intentional infliction of emotional distress, Plaintiff must

show that "the defendant intended to cause emotional distress or knew or should have known that

its conduct would result in serious emotional distress to the plaintiff."  *Talley v. Family Dollar*

*Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).  Defendant's conduct must be so

extreme and outrageous so as to be "beyond all possible bounds of decency and was such that it

can be considered as utterly intolerable in a civilized community."  *Id.*  Defendant's conduct

must also be the proximate cause to the plaintiff's psychic injury.  *Id.*  Finally, plaintiff's injury

must be so serious that "no reasonable person could be expected to endure it."  *Id.*

---

 [5]  As discussed above, Plaintiff does not contest the fact that Wainwright did not
know of Henderson's 2004 investigation until after December 25, 2009.  ECF No. 35 at
4.

(4:11CV00028)

Here, Plaintiff has not demonstrated how either Wainwright or Vechiarelli have intended to cause psychic injury to Jane Doe. Nor has Plaintiff alleged any extreme and outrageous conduct on the part of Wainwright or Vechiarelli. And while the Court does not intend to diminish the emotional suffering that Doe has endured, Plaintiff has not made any arguments that demonstrate that no reasonable person could be expected to endure the pain, at least with respect to the allegations made against Wainwright and Vechiarelli. Conspicuously, Plaintiff did not address the intentional infliction of emotional distress claim whatsoever in his Opposition Brief. ECF No. 35 at 2. Absent evidence to the contrary, Wainwright and Vechiarelli are entitled to judgment as a matter of law on the claim of intentional infliction of emotional distress.

Plaintiff is unable to establish that Wainwright and Vechiarelli have acted with the level of culpability required to remove qualified immunity granted to employees of political subdivisions. Plaintiff has also failed to state a *prima facie* case for intentional infliction of emotional distress. Wainwright and Vechiarelli's motion is granted with respect to all state law claims.

### IV. Conclusion

For the reasons stated above, Defendant Henderson's Motion for Partial Summary Judgment (ECF No. 32) is granted. The Eighth Amendment § 1983 and R.C. 2307.60 claims are dismissed. Plaintiff is to amend his complaint consistent with this Memorandum of Opinion and Order no later than 14 days from the date of this Order. The assault and battery (Count I), Fourteenth Amendment § 1983 (Count VI), and intentional infliction of emotional distress (Count VIII) claims against Henderson shall proceed to trial.

26

(4:11CV00028)

Defendant Mahoning County Children Services Board, Wainwright, and Vechiarelli's

Motion for Summary Judgment is granted in its entirety.  ECF No. 33.  Defendants Mahoning

County Children Services Board, Wainwright, and Vechiarelli shall be dismissed as parties to

this suit.


IT IS SO ORDERED.


 July 13, 2012                                      /s/ Benita Y. Pearson
Date                                                 Benita Y. Pearson
                                                     United States District Judge

27